## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

JEFFREY S. PROSSER,
BROOKE PROSSER,
FRED RUSH, NICHOLAS RUSH, ALEX RUSH
GORDON WEIDLE, BRANDON WEIDLE,
MICHAEL CULJAK, WILLIAM CULJAK,
CAROLINE CULJAK and
NICHOLAS PERO

      Plaintiffs

Case # : 3:21-CV-518

**CLAIM OF UNCONSTITUTIONALITY**

      V.

THE AUBURN UNIVERSITY BOARD OF TRUSTEES:
~~B.T. ROBERTS, CLARK SAHLIE, JAMES W. RANE,~~
~~BOB DUMAS, JIMMY SANFORD,~~ GAINES LANIER,
~~ELIZABETH HUNTLEY,~~ SARAH B. NEWTON,
MICHAEL A. DEMAIORIBUS, JAMES PRATT,
~~WAYNE T. SMITH, RAYMOND J. HARBERT,~~
CHARLES D. McCRARY, QUENTIN RIGGINS,
TIMOTHY VINES, KAY IVEY, President of the Board of Trustees
and Governor of Alabama,

JAY GOGUE, President of
Auburn University;

BILL HARGRAVE, Provost, SARAH NOBLES,
residency coordinator, & KAREN BATTYE, registrar,
SUSAN MARSH, assistant registrar

### COMPLAINT

COME NOW, Plaintiffs, individually and cumulatively, by and through their undersigned

attorneys, and show unto the Court the following:

### INTRODUCTION AND BACKGROUND

### CLAIM AND NOTICE OF UNCONSTITUTIONALITY

1.      Plaintiffs are suing under the provisions of 42 U.S.C. §1983, a civil rights law

passed by Congress that provides a remedy for persons who have been deprived of their

federally protected constitutional rights by defendants acting under color of state law. Plaintiffs allege that Auburn University is denying qualified Alabama citizens their rights to receive status as in state residents for purposes of tuition costs at Auburn University   (hereinafter "AUBURN" or "the University").   Plaintiffs challenge the constitutionality of Alabama Code §§ 16-64-2 through 5.  The Plaintiffs bring this case to show the unfettered ability of any Alabama university or college to capriciously and arbitrarily apply the statute to a particular fact situation and get a different result each time used.  The fact scenarios of each Plaintiff clearly illustrate the ability of the statute to be applied in an capricious and arbitrary way that is capable of denying the constitutional rights of bona fide Alabama residents.

2.      As more specifically described below, Defendants while acting under the color of state law deprived the Plaintiffs of their constitutionally protected rights as found in the Fourteenth (14th) Amendment (rights to due process and fairness) and the Privileges and Immunity Clause as found in Article IV Section 2 of the constitution. Auburn and the Defendants denied these constitutional rights to Plaintiffs in the administration of the petitions by former out of state Auburn students and parents to be classified as in-state residents.  Plaintiffs submit that their complaints of the denials of their constitutional rights existed at a time that they were all bonafide domiciled resident citizens of the State of Alabama. The Plaintiffs do not contend that Auburn University does not have the right to charge higher tuition rates to genuine out of state students. Plaintiffs do submit that the facts of their individual narratives herein will show the incredible extent to which any state university in Alabama, including Auburn, can pursuant to the Alabama statute, violate the above enumerated constitutional rights of the affected individuals, who are in fact bona fide Alabama state residents.

3.      Auburn University, a land grant university operating and conducting business in Lee County, Alabama is a corporate agency of the State of Alabama pursuant to the Code of Alabama (1975) §16-48-1.  The University is operated and managed by its Board of Trustees

who in turn delegates administrative responsibilities and  functions to the Auburn President, Jay

Gogue and other employees of the University.  The Governor of the State of Alabama, Kay Ivey,

is named ex officio as the President of the Board of Trustees.   There can be no serious debate

about the fact that Auburn University is a state agency of the State of Alabama. It is a creature

of the Alabama legislature and is a state agent for the purposes described in Alabama Code

§16-64-1 et seq.  Any action by Auburn University is a "State action" as contemplated by 42

USC §1983.


        4.      The legal framework governing the manner in which Alabama universities may

establish policies and procedures for determining the question of whether a one-time out of

state student has established residency in Alabama for tuition purposes is set out in Section

16A §§16-64-(2-5) of the Code of Alabama (1975) as amended (hereinafter "the Governing

Statutes") and is attached as Exhibit A hereto.  The Governing Statutes set out in detail what

the university must consider in determining what the State university must consider in deciding

whether a student can be classified as an in-state student. State universities are also

empowered to set up their own individual internal policies and procedures to administer this

under the terms of such statutes. These statutes are <u>unconstitutionally overly broad</u> and give

unfettered capricious discretion to all state universities including Auburn University to make

decisions about who is and who is not a bonafide citizen of the State of Alabama for purposes

of receiving in state tuition. See Alabama Code §16-64-5.  Auburn has been capricious and

discriminatory in its application of the statutes. Plaintiffs also submit that the statutes are

unconstitutional on their face as they clearly give each Alabama state institution of higher

learning complete freedom to develop its own plan with no upper limit on its terms and

conditions and no statutory means of any independent review of a decision of such state agent

It uses the statutes and the vagueness inherent therein to require the approved students and/or

parents of dependent students to annually prove and certify their residency status.

5.   Additionally, Plaintiffs submit Auburn has set up its individual plan to determine whether a non-resident student can become an in-state student that is lacking the minimal aspects of procedural due process.  Despite all of the verbage and window dressing,   Auburn's system obscures the fact that the final decision on all such cases is left solely in the hands of one individual; the Provost of Auburn University.  Auburn attempts to put a veneer of due process on the activity while in actuality it is left only to the arbitrary and capricious desires of the Provost.

6.   Pursuant to the Governing Statutes, Auburn, acting by and through the Defendants, established for Auburn various procedures and processes so that students and parents who had once been classified as out of state students and who have relocated their residency to Alabama can make application for reclassification as an Alabama resident in-state student. These procedures are attached hereto and incorporated herein as Exhibit B attached hereto and incorporated hereto (hereinafter referred to as the "Resident In-State Student Procedures").

7.   Any student who is classified as an out of state student may make an application to the Board of Registrars for reclassification as an Alabama resident in-state student upon meeting a specified set of requirements.  Surprisingly, meeting all of the written requirements in its own plan does not necessarily meet Auburn's own standards for determination as an in state student.

8. The Plaintiffs herein specifically challenge the constitutionality of the following applicable Alabama statutes which regulate the status of a student for in-state purposes; Code of Alabama §§16-64-2 , 16-64-3, and 16-64-4, and 16-64-5. The Plaintiffs request that the Court declare the same to be unconstitutional as they are arbitrary and capricious on their face and in their application in the determination of a student's status for determining when or not he or she

4

is a bona fide Alabamian for purposes of in state tuition.

9.  As background for examining the unconstitutional aspects of Alabama Code 16-64-1 et seq one should look at the incredible financial conflict of interest of Auburn University in making these decisions. Auburn's student body is over 35% out of state students. The per semester tuition charge for instate students is approximately $5,000.00, while the out of state tuition per semester is approximately $15,000.00 or three times the in-state amount. For EACH student denied or delayed being recognized as in-state means an additional $10,000.00 per semester to Auburn's financial bottom line.  This premium provides more revenue to Auburn than is provided by the Alabama legislature, thus creating an enormous incentive to preserve such revenue stream at all costs.   To make the administration of Auburn the ultimate arbiter and decision maker on this issue in light of the staggering economic conflict of interest would be equivalent to making the executives of a public utility members of the Alabama Public Service Commission that regulates the public utilities earnings. The temptation to place their finger on the scales of fairness is simply too great for this statute to pass constitutional sufficiency.

## THE § 1983 CLAIMS

10.     Under the provisions of 42 USC §1983, out of state Auburn students have federally protected rights to due process as they seek relief under the Resident In-State Student Procedures. Auburn and the Defendants who administer these policies and procedures have a duty to protect, safeguard, and recognize these fundamental and constitutional rights. This means that when a student or parent submits a legitimate application demonstrating legitimate and real Alabama resident status, the officials at the University must apply the guidelines to each and every individual claim with **consistency**, **transparency**, **fairness**, and **reason**.

11. In addition, the privileges and immunities clause is another constitutional right of the students being violated by Auburn's plan.

12.      Plaintiffs allege that Auburn, acting through the Defendants, has not afforded consistent, honest, transparent, fair, and reasonable treatment or interpretation to large members of these specific Plaintiffs and countless others who simply gave up, under the Resident In-State Student Procedures. Rather, in response to legitimate applications by parties seeking in-state status, such petitioners have been subjected to outrageous and ever changing demands to prove their residency, and unreasonable delays. Plaintiffs allege that their rights to travel under the 14th amendment to the United States Constitution have been violated.

13.      Perhaps motivated by the fact that out of state students pay twenty thousand dollars ($20,000.00) a year more than in-state students, there is no consistency and transparency in the process.  The statutes are arbitrary, capricious and capable of being used to the financial benefit of the Defendants while denying the constitutional and statutory rights of the Plaintiffs.  There is no clear definition on how to prove a case of residency, what the burden of proof is, and no defined time lines.  Further when petitioning individuals, believing that they would finally be awarded in-state residency status, have submitted evidence that reasonably met requirements under the Resident In-State Student Procedures, their applications have been delayed **or** denied with no reasonable justification and new requirements and questions have been communicated causing further delay.   To be succinct, the statutes are vague, capricious and capable of being arbitrary in their application and Auburn University has in fact and deed used this statutes wrongly to its benefit while denying equal civil rights to qualified Alabama residents.  Specific examples are denoted in the sections below dealing with Plaintiffs experience in this regard.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction of this action pursuant to 28 U.S.C.A. §1342 (3)(1948) and 28 U.S.C.A. §1331 (1948) because the Plaintiffs are raising fundamental federal questions of fairness and due process in the administration of the Auburn Resident In-State Student Procedures under 42 USC §1983.

15.    Venue is appropriate because the Defendants acting in their official capacity during all or a substantial part of the events and omissions giving rise to these claims occurred in Eastern Division of the Middle District of Alabama. Moreover, legitimate residents of the State of Alabama and reside in the State of Alabama as bona fide citizens.

## THE PARTIES

### The Plaintiffs

16.    JEFFREY PROSSER.  Plaintiff Jeffrey Prosser is the father of Plaintiff Auburn student Brooke Prosser. For purposes of performing his job sales requirements in the State of Alabama, Plaintiff Jeff Prosser and his family moved to Lee County, Alabama, in 2017, where he and his family have resided continuously thereafter.  For purposes of brevity, the claims and exhibits of the Prossers are typical of the claims and very similar exhibits of the other Plaintiffs. The Prosser exhibits are exclusive to the complaint in order to avoid needless repetition in simply making the claims of the Plaintiffs clear in keeping the complaint as short and concise as possible

17.    Plaintiff Brooke Prosser is a duly enrolled student and matriculate at Auburn University. She is over the age of nineteen (19) years.  At all times pertinent to the allegations in this complaint, she has also been a bona fide resident of the State of Alabama and Lee County.

7

18.  NICHOLAS PERO: Moved from Florida to open a branch of his business here in Alabama. He qualified for the year and as a domiciliary. In 2018, he began working at the Tiffin Motor Home plant in Red Bay, Alabama. Thereafter he began work with his business located in Mobile. In late 2019, he returned to full-time student status. His application and subsequent appeals for instate residency classification were denied due to the fact that his employment was with his company. Residency staff had initially informed the Peros that working for his business would not hinder the residency application; however upon submission they were informed that a new rule had been promulgated disallowing work at a relatives business or place of employment. He was denied in state status. Nicholas is claiming independent status as a student who has properly qualified as an in state resident.

19.  BRANDON WEIDLE : His father, Gordon Weidle moved and purchased a home in Dadeville, Alabama in the spring of 2018 and immediately obtained all qualifying Alabama matters of domicile. This is his primary residence.  He moved here to Alabama to mainly service his largest clients Weidle filed for in state status in July 2019.  He was denied two weeks later. He applied a 2nd time on 6-26-2020.  He appealed 7-3-2020. He was denied on 7-28-2020.

20.  CAROLINE and WILLIAM CULJAK : The father of these two students is a Delta Air Lines pilot. He was transferred to the Atlanta air hub from the Detroit air hub. He and wife Patty first rented an apartment during 2017 and 2018 in Opelika near the interstate and then built their life time dream home in Opelika which they have owned since 2019. It is currently homesteaded as residential.  The dad commutes to Atlanta from Opelika. All applications and subsequent appeals have been denied. All of the family reside permanently in Opelika, Alabama with Mr. Culjak.

8

21.   NICHOLAS and ALEX RUSH : Their father was transferred from his company in Austin, Texas to Alabama to work engineering services in Alabama. The mom and youngest child were still in Michigan finishing the school year.  They sold all of their real estate ( a single family home in Michigan) and moved to Auburn in 2019. They maintain that they were immediately fully domiciled Alabama residents and entitled to resident status. Their father is an Auburn engineering alum, Fred Rush. They were required to pay tuition as out of state students initially but were later granted in state status.  Auburn continues to harass and annoy the Rush family and students by making them provide proof of their status as Alabama residents.  This amounts to unjust harassment of bonafide Alabama residents by Auburn University that demands on-going proof of residency for some while not requiring it from others.

## **The Defendants**

22.    Defendant BT Roberts is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

23.    Defendant Clark Sahlie is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

24.    Defendant James W. Rane is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

25.    Defendant Bob Dumas is and has been a member of the Board of Trustees of

9

Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

26.    Defendant Jimmy Sanford is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

27.    Defendant Gaines Lanier is and has been  a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

28.    Defendant Elizabeth Huntley is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

29.    Defendant Sarah B. Newton is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

30.    Defendant Michael A. Demaioribus is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

31.    Defendant James Pratt is and has been a member of the Board of Trustees of the University and as such is responsible for the establishment, supervision, fairness, and integrity of the Auburn University Provost's administration of the student petitions for Alabama resident status that are filed from time to time.

32.    Defendant Wayne T. Smith is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

33.    Defendant Raymond J. Harbert is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

34.    Defendant Charles D. McCrary is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

35.    Defendant Quentin Riggins is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

36.    Defendant Timothy Vines is and has been a member of the Board of Trustees of Auburn and as such is responsible for the establishment, supervision, fairness, and integrity of the Provost's administration of the Auburn Resident In-State Student Procedures.

37.    Defendant Kay Ivey is the President of the Board of Trustees of Auburn, Governor of the State of Alabama and has the right to sit in all Board of Trustees meetings.

38.    Defendant Jay Gogue is the President of the University on information and has the power and ability to confer with the other defendants to corrective action and right the wrongs complained of herein.

11

39.     Defendant Bill Hargrave is and has been at times material hereto the Provost of the University and is primarily responsible for administering the Resident In-State Student Procedures.

40.     All of the above Defendants are being sued in both their official and individual capacity because of their acts and omissions in respect to the establishment, administration, supervision, oversight, and financial aspects of the Auburn Residential In-State Student Procedures.

## A DETAILED EXPLANATION OF THE § 1983 CLAIMS
## AGAINST AUBURN UNIVERSITY

41.     The problems in the Defendants' administration and supervision of all aspects of the Resident In-State Student Procedures are almost too numerous to list. A thorough examination reveals a culture of deceit and delay, a culture of denial and bias, an inadequate definition of the burden of proof, no clearly articulated standard of internal appellate review, no time table for adjudication, no actual in-person fair hearing, a pattern of asking repeated questions that promote delay and frustration, and a total lack of empathy. Furthermore each applicant must make a request separately for every semester until they are ultimately <u>delayed or denied</u>. These and other infirmities are specifically noted below in the paragraphs dealing specifically with the Plaintiff's fact situations.

42.     Plaintiffs allege on information and belief that an inherent bias obviously exists within the Auburn administration against persons seeking in-state status because the financial incentive of charging three (3) times as much for out of state tuition is too compelling. Here are some other examples of problems in the procedures: no institutional directives exist within the

administration to apply due process or fairness; the administration's culture is to thwart relief seekers by deliberately complicating both the application and appellate processes; the online submission process denies the applicant any opportunity to see the decision-makers and to be heard face-to-face. The denial of "in-person" interviews and discussions make it impossible for administrators to evaluate the credibility of any specific case or the stability and genuineness of the applicant. The applicant is not informed as to who makes the final decision about residency status, or at what level.

43.     Administrators approach this process with students and parents with the clear and apparent intent to withhold relevant information, to delay communications, to ask perpetual questions, to avoid personal contact, and to maintain the opaque nature of the decision-making process, as a whole. Far too much ad hoc discretion is vested in the Registrar's Office with no transparency in their decision-making process. No clear and consistent explanation is communicated to students and parents regarding the standard of their burden of proof. No clear and consistent explanation is offered to students and parents regarding the appeal process and the or standard of review. No clear and reasonable explanation is given when an application for in-state status is denied.

44.     Communications from the Registrar's Office are dishonest, inconsistent and spotty, at best. Responses to applications and other communications initiated by students and parents are not prompt and tend to be evasive and vague, or punitive and rigid in their instruction.

45.     Plaintiffs allege ever-changing requirements and demands. Repeated questions by email from administrators are often myopic and seemingly irrelevant (e.g., *"How many groceries have you bought in the state of Alabama?"  Why haven't you joined a local church* ?). The demand that each applicant start the process completely over before each semester is

needless and burdensome and simply cannot be justified under any logical theory of fairness or due process.

46.     Plaintiffs allege on information and belief that it has been many years since the Resident In-State Student Procedures have been reviewed for fairness, consistency, or accuracy. During this time frame an inherent bias has crept into the processes, and this bias, motivated by the enormous revenue stream, has placed an unreasonable burden of proof upon applicants seeking honest residency status. Auburn's culture of delay, deny, and "continue to question" Plaintiffs has replaced fairness, empathy, and understanding. Auburn, as represented by its administrators in the registrar's office, is economically motivated to recruit and maintain as many out-of-state students as possible and to keep them classified as out of state students forever. After all, the tuition paid by these students is significantly higher (i.e., approximately triple than that paid by Alabama resident students.) Adding to the frustration of students and parents seeking in-state residency status, the appellate process has been illusory, opaque, and misleading.

## SPECIFIC FACTS APPLICABLE
## TO PLAINTIFFS JEFFREY PROSSER
## AND BROOKE PROSSER

47.     The facts of the Prossers mentioned below are expanded beyond what is merely necessary to show the typicality of claims of the other Plaintiffs seeking in-state residency status under the Resident In-State Student Procedures who have merely given up and either paid out of state tuition or left Auburn due to their inability to pay the outrageous sums. In the summer of 2017, after Brooke had applied and been accepted, her father was transferred by his employer to Alabama and felt he should be considered as an Alabama resident for tuition purposes. Attached as Exhibit C is a letter from Mr. Prosser's records on his transfer to Alabama.

14

48.    Plaintiff Brooke Prosser entered Auburn as a Freshman in the Fall of 2017. She applied and was accepted as an out of state student from her previous address located at 433 Hunters Creek, Dallas, Georgia 30157. Plaintiff Jeffrey Prosser and his wife attended a Residency Seminar and a presentation during Camp War Eagle was given by two members of the Auburn Residency Office that included a Powerpoint presentation that was identical to the Auburn Residency website page at that time. This PowerPoint explained the steps that the Prossers needed to take to obtain in-state residency status for tuition purposes.

49.    Plaintiff Jeffrey Prosser took notes at the Camp War Eagle seminar knowing that he had accepted a new position with his employer that moved him to Alabama effective June 15, 2017, so that his daughter could apply for in-state residency.

50.    In the Fall of 2017, it was clearly Auburn's written policy to recognize fully dependent college students whose parent's employer legitimately moved them into the state of Alabama and that a residency appeal should be submitted after one (1) year (12 months) of living in the state of Alabama.

51.    After believing Auburn's advisors that he could not apply until twelve (12) months had elapsed (*which is clearly wrong*), Plaintiff Jeffrey Prosser's First Residency Appeal was submitted for the Fall Semester of 2018. All guidelines provided by Auburn were followed exactly as shown on the Auburn Residency website and all such information provided.  Plaintiffs meticulously provided all the documents required.

52.    Plaintiffs' first residency appeal was denied for the following reasons: Auburn employee Susan Marsh verbally informed Plaintiff Jeffrey Prosser that his banking account statements did not have his Alabama address on them for the full twelve (12) months preceding

15

the start of the Fall Semester of 2018, and that he needed to show more additional spending in the State of Alabama, particularly credit card bills for grocery purchases. He was also verbally instructed by Defendant Marsh to provide any other documents that "tied him" to the State of Alabama.

53.    Thereafter, Plaintiff Jeffrey Prosser asked Defendant Susan Marsh what other type of documents she was looking for. She responded by saying "other children's school records that were attending Alabama schools, proof of church attendance locally, and she recommended that he join local organizations in the State of Alabama".

54.    The Plaintiff Prosser's Second Residency Appeal was submitted on October 8, 2018 for the Spring Semester of 2019 by email to:  OTR Residency  at resid@auburn.edu. A copy of that appeal letter is attached as Exhibit D. Plaintiffs believe that there is an inherent intimidation factor in requiring submission to an anonymous website which is designed to discourage and make it impossible for certain class members to even start the process. Because no one knows by who or when information submitted to the portal is reviewed, there is a lack of accountability, a potential of a lack of confidentiality, and an intimidation that is conveyed to the applicant who is never given an explanation of (a) what happens to the information in the portal, (b) who looks at it, or (c) what happens to it once a denial has been issued.

55.    In response to this second appeal, Plaintiff Jeffrey Prosser received an email from Defendant Susan Marsh, after he sent another email to Residency Appeals on December 6, 2018, asking for a status update of his second appeal. Defendant Susan Marsh replied later on December 6, 2018, stating that "it would be helpful if you supplied additional documentation such as proof of sale of your home in Georgia, additional spending in the State of Alabama, and any other documents that tie you to the state of Alabama". Plaintiff Jeffrey Prosser then

16

amended his second appeal letter and attached thirty (30) pages of credit card spending, all in the State of Alabama.

56.    Roughly two (2) weeks later, Plaintiff Jeffrey Prosser received a form letter from Auburn that his second appeal was denied because he failed to show "clear and convincing evidence of establishment of permanent domicile in Alabama". By this time three (3) semesters had gone by, Plaintiff Prosser's daughter had been in school for that entire time, and he had yet to have a face to face meeting or the opportunity for a hearing in front of anyone in authority. Everything had been submitted digitally and he had no clear understanding of what would happen to the confidential digital information he had submitted after the appeal was denied.

57.    Plaintiff Jeffrey Prosser's Third Residency Appeal was submitted in early May of 2019, for the Summer Semester of 2019. In response, he received an email from Defendant Sarah Nobles, then the Residency Coordinator/Appeals Processing employee. (her Email is attached as Exhibit E). Defendant Nobles acknowledged receipt of Plaintiff's residency documents supplied and said that his banking statements did not indicate any Alabama activity other than his Alabama Power Bill. Plaintiff Prosser then called Defendant Sarah Nobles by phone to discuss, and she suggested that he send his credit card statements for the past twelve (12) months.

58.    Plaintiff Jeffrey Prosser then sent the previous twelve (12) months of his personal credit card statements to the Auburn OTR Residency website. These statements showed that seventy percent (70%) of his charges were in the State of Alabama with grocery store charges, pharmacy charges, car repairs, restaurant charges, etc.  Most of these charges were in the Auburn and Valley, Alabama area.

17

59.    Several more months passed and Plaintiffs never heard anything back from Defendant Sarah Nobles. When Plaintiff Jeffrey Prosser tried to email her and call her by phone, he received back an "out of office email and I am on Maternity Leave, please email the OTR Residency Website". He left three (3) emails and several voicemails to her personally or to the website over the Summer of 2019; and none were responded to. Moreover, by continually referring the Prossers to an anonymous website which lacks any semblance of accountability the Prossers never really understood or knew the status of their petitions.

60. The experiences of Plaintiffs Jeffrey and Brooke Prosser as detailed in the foregoing paragraphs are clear examples of the pattern of delay and denial perpetrated by the named Defendants regardless of the facts . The Defendants representatives in the Registrar's Office repeatedly ask needless questions without any clear explanation to the Plaintiffs about the reasons for the questions or a time line for getting a decision.

61.    Plaintiff Jeffrey Prosser finally received another Residency Appeals Rejection Letter from Defendant Dr. Norman Godwin, Assistant Provost, on August 13, 2019. Through Plaintiff's attorney, he made one last effort to the Office of the University General Counsel. Plaintiff Jeffrey Prosser and his wife, Paige Prosser, filed an affidavit alleging their genuine residence in the State of Alabama and an appeal letter to Auburn's General Counsel with all documentation (including credit card statements). Auburn's General Counsel stated that all appeals were final and all future appeals by Plaintiff Jeff Prosser for his daughter Brooke Prosser would not be accepted.

62.  At all times pertinent herein, Plaintiff Brooke Prosser has qualified for in-state tuition. In violation of her constitutional rights, as protected by 42 US §1983, Auburn acting through the Defendants has wrongfully denied her applications for in-state tuition to her financial and emotional detriment.  Her father, Plaintiff Jeffrey Prosser, her support provider, has attempted to

18

seek redress for these wrongs through the established appeals process and has exhausted all his and her administrative remedies available through the Auburn University procedures and practices. There are no further administrative opportunities for the appeal of her residency status. She continues to properly qualify for in-state tuition classification which has been wrongfully denied by Auburn and its representatives.

63. Plaintiff Jeffrey Prosser has in every way qualified as a bona fide Alabama state resident in order for his daughter Plaintiff Brooke Prosser to be granted in-state tuition. He has met every qualification of the Alabama Code Title 16-64 and the University's published list of requirements for eligibility for in-state status. Auburn wrongly denies his appeals.

## SPECIFIC FACTS APPLICABLE
## TO PLAINTIFF NICHOLAS PERO

64. At all times pertinent herein for more than the last twelve months preceding the filing of this petition, NICHOLAS PERO (hereinafter known as "PERO") has qualified for in-state tuition. Auburn University has wrongly and intentionally denied him in-state tuition to his financial and emotional detriment. He has attempted to seek redress for this wrong through the established appeals process and has exhausted all his administrative remedies available through the university procedures and practices requirements. There are no further administrative opportunities for the appeal of his in-state status. He continues to properly qualify for in state tuition classification due to the wrong and fraudulent actions of Auburn and its employees.

65. The petitioner has met every qualification of the Alabama Code and the Auburn University published list of requirements for eligibility for in state status. Auburn wrongly denies

his appeals. At a time during the process of the plaintiff-petitioner's application, Auburn changed its own website of subjective requirements to his detriment.

66.    Pero graduated from high school in Florida in 2017.  He applied early to Auburn University in October 2016 and was accepted in November 2016.  Pero had always intended on totally and finally relocating to the State of Alabama due to the fact that he wanted to go into his family business which is involved in sales to large electric utility providers.  As such, Pero chose Auburn instead of the University of Florida or Georgia Tech because he wanted to study engineering at Auburn and permanently reside in Alabama and develop and service his family businesses account in Birmingham and elsewhere in the state.  This was his sole motivation in going to Auburn.

67.  Pero moved to Auburn in August of 2017 permanently.  He lived in a dormitory and was a full time out of state student at that time, upon arriving in Auburn, Pero began in earnest discussions with Sam Walden and Sarah Nobles in the registrar's Office as to what steps he needed to take to be qualified as in state student for tuition purposes.   He complied strictly with their instructions.

68.  Pero took time off from school and went to work for Tiffin Motorhomes in Alabama in August 2018 and remained there until December 20, 2018 at which time he quit and moved back to Lee County, in the City of Auburn. While in Redbay he worked a minimum of 40 hours weekly. He next enrolled for 6 hours only of courses at Auburn and went to work at the Auburn University Golf Club for at least 25 hours a week and worked 15 to 20 hours weekly for his family business doing administrative work and marketing functions to develop business relationships in the State of Alabama.  He did this until the end of May 2019.In June of 2019 he returned to Tiffin Motorhomes in Red Bay, Alabama and worked full time there over 40 hours weekly until August 10, 2019.

69.  In the mean time he applied for Alabama residency determination in July of 2019 after having complied with what he had been told to do by Sam Walden or Sarah Nobles. Coincidentally in the month of August in 2019, the university changed its website regulations prohibiting a prospective student from counting time worked for a family business to qualify for full time employment.  At no time did Sarah Nobles or Sam Walden ever tell Pero that working for a family owned business would not qualify for full time work status. It was apparently after this time that the University changed its website to state that.  Pero relied to his detriment on the fact that there was no such requirement when he was fulfilling the same.

70.  Pero was turned down for residency qualifications in July of 2019.

71.  Plaintiff Nicholas Pero has in every way qualified as a bona fide Alabama state resident in order to be granted in-state tuition.  He has met every qualification of the Alabama Code Title 16-64 and the University's published list of requirements for eligibility for in-state status. Auburn wrongly denies his appeals.  He did everything he was told to do by the office of registrars and at the end, he was refused after Auburn changed its policy against him in the middle of the stream.

## SPECIFIC FACTS APPLICABLE
## TO PLAINTIFFS MICHAEL, CAROLINE AND WILLIAM CULJAK

72.  Michael Culjak is a retired U.S. Air Force special operations pilot.  He has worked since 2000 with Delta Air Lines.  Prior to July 2019, he and his wife lived in southern Michigan area with their children.  Upon being transferred to the Atlanta Delta Air Lines hub, Mr. Culjak moved to Opelika, Alabama and began commuting back and forth to the Atlanta Hartsfield Airport.  This was not a daily commute and thus posed no real hardship on him.

73.   In July 2019 he and his wife, Patty Culjak rented an apartment in Opelika, Alabama with the intention of permanently residing in Opelika.  It was their intention not to stay permanently in an apartment but to the contrary were desirous of building their "dream home" in the Opelika or Auburn area where he could conveniently drive to work and avoid having to live in metro Atlanta.  They joined a local church.  Mr. Culjak joined the Alabama American Legion, and became active in the Alabama unit of the Civil Air Patrol.  They have further immersed themselves in the community socially and he registered to vote in Lee County, Alabama.

74.   Mrs. Culjak remained in Michigan for a short time during which time their youngest child could finish out the school year.  Mr. Culjak did not want to live in the metro Atlanta area due to the traffic and highly dense population.  He had lived in metro Atlanta previously and did not enjoy it.  Thus he and his wife wanted to live in a smaller town.  Their home in Opelika is homesteaded.

75.   Their daughter Caroline immediately became an Alabama resident in July 2019 when she and her father moved into the apartment in Opelika.  Mr. Culjak likewise immediately took all the necessary steps to become a domiciled resident of Lee County, Alabama.  He continued to commute back and forth to Hartsfield as he flew international flights for Delta. During this time period, he and Mrs. Culjak undertook all the steps to build their permanent home in Opelika, near Interstate 85.  The home was completed in December of 2019 and they began moving out of the apartment and into the house.  Their son William moved into Alabama in the summer of 2020 and began his immediate domicile in Alabama as well.

76.   Michael Culjak immediately began paying Alabama income tax and filed an application for his daughter Caroline and son William to be determined as Alabama residents some time prior to June 2020.  This application was denied on June 23, 2020.  Mr. Culjak appealed on July 22, 2020 with copies of their Alabama income tax returns. Their appeal was

denied thereafter in 2020.

77.    Due to the financial hardship of out of state residence expense costs, William

Culjak has elected to temporarily work full time in Auburn until such time as he can save money

to resume his studies and his father be declared an Alabama resident for purposes of tuition.

## SPECIFIC FACTS APPLICABLE

### TO PLAINTIFFS BRANDON WEIDLE and GORDON WEIDLE

78.  BRANDON WEIDLE : His father Plaintiff, Gordon Weidle moved and purchased a

home in Dadeville, Alabama in spring of 2018 and immediately obtained all qualifying Alabama

matters of domicile. Gordon Weidle lived there.  He joined hunting clubs and developed good

and extensive social networks in the community.  This was and is his primary residence.  He

moved here to Alabama to mainly service his clients in Alabama and other contiguous states in

the southeast . Weidle filed for in state in July 2019. He was denied two weeks later.  He

applied 2nd time on 6-26-2020. He appealed 7-3-2020. He was denied 7-28-2020.

## SPECIFIC FACTS APPLICABLE

### TO PLAINTIFFS FRED RUSH and NICHOLAS RUSH and ALEX RUSH

79.   Nicholas and Alexander Rush : Their father had his permanent work site moved to

Auburn from their prior location in Austin, Texas.  The mom, Sandra and the youngest child,

Anastasia, completed the 2019 school year in Michigan prior to moving to Alabama where the

youngest is now a full-time high school student in Opelika.  The Rush family sold all their real

estate (a single-family home in Michigan), and moved to Auburn in 2019.  They were

immediately fully domiciled Alabama residents and were entitled to resident status.  The

student's father, Frederick Rush is an Auburn engineering alum.  They were required to pay

tuition as out of state students for Summer 2019, Fall 2019, and Spring 2020 terms, but were later granted in state status.

80.   Nicholas Rush applied, was accepted, and began attending Auburn in the Fall 2018 term.  He applied and was accepted being classified as a non-resident with an address of 2865 Half Moon Lake Road, Hillsdale, Michigan 49242.  He graduated from Hillsdale Academy in Hillsdale, MI. Alexander Rush applied, was accepted, and began attending Auburn in the Fall 2019 term.  He applied as a Junior College transfer student from Jackson College in Jackson, MI, and used the at the time of application a home address of 2865 Half Moon Lake Road, Hillsdale, Michigan 49242.  He applied to Auburn knowing that the family was already in the process of moving to Auburn, and was classified as out of state for tuition purposes at the time of acceptance.

81.   Plaintiff Frederick Rush attended Camp War Eagle in 2018 and during the residency breakout session, the discussion centered on how residency was determined, and the underlying theme was you had to have more ties to Alabama than any other state.  With this in mind, the only family home owned was in Alabama, cars were registered in Alabama, insurance policies were issued in Alabama, their banking was established at Regions in Alabama as well as all other accounts show an Alabama mailing address. The child living at home attended high school in Opelika, Alabama, utility accounts for the family home were in Alabama, their drivers' licenses are from Alabama, professional society mail was delivered to Alabama. Also very importantly, Fred Rush's employer identifies the permanent full time work location in Alabama.

82.   Nicholas first applied for in state tuition in 2019.  With both children expecting to receive in state status, but working on only one at a time, the second expected to be a copy of the first once the application was accepted.  This application was made in the Summer of 2019 and was denied.

24

83.  In late April 2019 the Rush family unexpectedly received a sales contract for their Michigan home, providing for a delayed closing in June 2019.  Alexander applied to Auburn as a transfer student from junior college as move to Alabama is now expected.  Alexander was admitted to Southern Union to complete pre-requisites for Auburn admission and temporarily moves into the family condominium they already owned in Auburn.

84.  In the fall of 2019 – Alexander and Nicholas attended Auburn and were both still classified as out of state.  The youngest daughter, Anastasia then attended Trinity Christian School in Opelika, Alabama.  Frederick was working full time in Auburn as letter supplied in December 2019 indicates.

85.  The Plaintiff Nicholas Rush filed for in state status again in the Fall 2019 term for the Spring 2020 term.  In addition to the previously mentioned documentation showing Alabama residency, pay-stubs showing income tax paid to Alabama and a letter re-affirming the full-time permanent location of my position to be within Alabama were added.  The application was again denied, again on the grounds that Frederick was a Tele-worker.

86.  The Plaintiff filed for in state status again in the Spring 2020 term for the Summer 2020 term.  In addition to the previously mentioned documentation showing Alabama residency, W2 forms, Federal and Alabama tax forms, updated pay stubs, a report card from the just completed term, and finally a progress report from the current term for the Plaintiff's high school aged daughter were supplied, showing current attendance in Opelika.

87.  On the third attempt during the Spring 2020 term, after fulfilling a request for additional documents, then a second request for yet more documents, in state residency was granted.  However, granting in state residency didn't alter the billing for Summer 2020 term, as the initial bill received continued to show out of state tuition being charged for Alexander

(Nicholas was working the Summer 2020 term). First billing statements for Fall 2020 term showed that Nicholas was still being assessed out of state tuition, even after being granted in state status.

88.  In December 2019 a second application for in state was made. It was denied because Frederick was still classified as a tele-worker, This was in direct contradiction to company statement on work location.

89.  In April 2020 a third application for in state was made. It was initially denied for failure to prove current enrollment of their daughter in high school, as report card was two months old.

90.  The family submitted most recent progress report from school for their high school daughter, and the objection changed to failure to provide 2020 (not 2019) tax documents. When indicated that 2020 tax documents are impossible to provide prior to 2021, in state was finally granted. Auburn continues to apply unequal treatment against these Plaintiffs by annually requiring Fred Rush to verify his Alabama State income tax returns in full to it. Not all other Alabama residents are not required to do this in order to continue their status as in state students or parents.

91.  Additional documents showing Alabama power bills starting in May 2019 were also added to the filing. In May of 2020 the Auburn summer billing statement for Alexander continued to indicate out of state status. Persistent calling required to have this corrected prior to the schedule drop date.

92.  In July 2020 the Fall billing statement for Nicholas continued to indicate out of state status. It took persistent calling to have this corrected prior to the schedule drop date. The

Rush Plaintiffs seek reimbursement and ask that this Court order the Defendants to cease making them prove their Alabama residency each and every year.  This is an unjust denial of the rights offered to other Alabama residents who are classified as Alabama residents.  Again, this shows the arbitrary and capricious nature of the statute and how Auburn has used this to its financial advantage.

93.     The individuals implementing these procedures have a distinct bias against allowing out of state students obtaining in-state status. The manner in which the Defendants administer these procedures is not consistent, fair, reasonable or uniformly applied,  and the Court needs to enter a mandatory injunction to correct these procedures.

94.     As the foregoing paragraphs indicate there is a justiciable controversy and declaratory relief is justified. Moreover all the Plaintiffs have been and will be damaged by the conduct of the Defendants in violation of their constitutional rights for which they have no adequate remedy at law. Injunctive relief is necessary to correct the wrongs and problems in the administration of the Resident In-State Student Procedures.  The Plaintiffs maintain that the statutes in Title 16 of the Code of Alabama are unconstitutionally vague, capable of being administered without due process and the each and every use of said statute by Auburn University is subject to abuse by Auburn for its own financial gain.

95.   Each Plaintiff-petitioner has been damaged financially through the negligent, wanton, mistaken and intentional actions of the Board of Trustees through the actions of the office of the registrar and provost and their respective university employees and agents. They have all acted under incorrect and mistaken interpretation of the law. The plaintiffs-petitioners herein reserve the right to amend this complaint to add other parties and persons to this complaint who may be complicit in this unlawful continuing activity.  Plaintiff-petitioner also reserves the right to convert this action into a F.R.C.P. Rule 23-B Class Action, if this appears

appropriate. Through independent investigation, the undersigned have been told that the office of registrars is looking for its determining officers and agents to make subjective judgments as to whether or not a particular applicant and/or their family is using the "system" to perpetrate a wrong on Auburn, irrespective of whether or not the applicant has met the requirements of the statute. Compliance with the statute seems to be almost a non-factor.

## REQUESTS FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand on behalf of themselves and all others similarly situated the following relief:

## REQUESTED RELIEF
## INJUNCTIVE AND DECLARATORY RELIEF

1. Plaintiffs specifically request the Court, pursuant to 42 USC 1983 et seq and the proof at trial, to declare Code of Alabama sec. 16-64-2, 16-64-3 and 16-64-4 to be unconstitutional as arbitrary and capricious and overly broad on its face and in its application by Auburn when determining the change from out of state to in state status of students at Auburn for the purpose of tuition payments.

2. Plaintiffs request that the court direct the Defendants to submit a detailed plan for the Courts approval that meets the minimal requirements of Due Process and equal protection under the 14th Amendment and includes the following features;

a. A reasonable list of requirements that would be considered a prima facia for being an in state student for tuition purposes. Permitting the student to be so classified upon a verified showing of such requirements.

b. A definitive time frame, not to exceed 30 days ,in which Auburn could challenge said prima facie case by a written opinion giving the reasons for such challenge.

c. Provide for an appellate process through a panel not populated with Auburn personel but members of or appointed by the Alabama Department of Hgher Education to hear said Appeal by Auburn.

## MONETARY RELIEF AND DAMAGES

1.  Plaintiffs requests the court to set actual monetary damages for each individual plaintiff equal to the amount of money paid Auburn university for tuition in excess of the in state rate from the date they applied for in state status for tuition purposes through the time of trial or the date the plaintiff finished their course of study at Auburn, plus interest at the lawful legal rate and all appropriate costs associated with this matter.

2.  Plaintiffs request the Court award to the plaintiffs punitive damages should the proof at trial so warrant.

3.  Plaintiffs request the Court award attorneys fees as provided by 42 USC 1983 et seq and the cases thereunder related to the damages assessed and additionally attorneys fees warranted for the injunctive relief and declarative judgement findings of the Court.

4.  Any other or further damages or relief appropriate in law or equity under the findings of the Court or the proof at trial.

Dated: _8_-_4_ 2021

Mark E. Tippins
Auburn Blackstone Law Group
118 N. Ross St. #6
Auburn, AL 36830

T: 334.821-3670

Al. Bar I.D. TIP002

Neil E. Senkbeil
Auburn Blackstone Law Group
118 N. Ross St. #6
Auburn, AL 36830

T: 334.821-3670

Al. Bar I.D. SEN008