IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY S. PROSSER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-518-RAH |
| | ) | [WO] |
| B.T. ROBERTS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Several current and former Auburn University students and their parents filed this suit against twenty-five Auburn University officials, including all members of the Board of Trustees, the Provost, the Registrar, and the Assistant Registrar, all in their official and individual capacities (collectively, the Defendants).[1]   In their Second Amended Complaint (the operative complaint) (Doc. 67), the Plaintiffs allege that the Defendants arbitrarily and capriciously denied them in-state tuition benefits even though they met the relevant qualifications to become bona fide residents of the State of Alabama, in violation of the Fourteenth Amendment to the United States Constitution.   The Plaintiffs also assert that the Alabama statutory

---

[1] Defendants Dr. Jay Gogue, Bill Hargrave, Charles D. McCrary, and Sarah B. Newton have since left Auburn University.  Their successors in office have been substituted as parties for the official capacity claims.  (Doc. 79.)  The Plaintiffs maintain this action against Defendants Gogue, Hargrave, McCrary, and Newton in their individual capacities.

framework establishing the qualifications for being deemed a bona fide resident for in-state tuition purposes facially violates the Fourteenth Amendment because it grants each university too much discretion for determining who qualifies as a bona fide Alabama resident.  The Defendants have filed a motion to dismiss all claims. (Doc. 68.)  After considering the Second Amended Complaint, the Defendants' motion to dismiss and the subsequent briefing on the motion, as well as the arguments presented during oral argument, the Court concludes that the Defendants' motion to dismiss is due to be granted in part and denied in part.

## I.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 2201(a).

Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

As is appropriate at the motion-to-dismiss stage, the following facts are taken as true from the factual allegations set forth in the Second Amended Complaint:

Auburn University (Auburn), an Alabama public university, allows students who relocate to Alabama to apply to the Board of Registrars for in-state tuition after establishing bona fide residency in the state for a one-year period with an intent to remain as permanent residents.  (Doc. 67 at 6–7, 54–55.)  Auburn charges Alabama

residents $5,000 per semester for tuition, whereas Auburn charges $15,000 per semester to non-Alabama residents. (*Id.* at 7–8.) Several students (the Student-Plaintiffs) and their parents (the Parent-Plaintiffs) now claim they are or were unfairly deemed to be non-Alabama residents for tuition purposes, despite becoming bona fide residents of Alabama.

One example of the challenges these Plaintiffs have faced in securing in-state tuition as bona fide Alabama residents is the situation facing Plaintiff Nicholas Pero. Pero moved to Alabama from Florida in 2017 to enroll at Auburn University and with the intent to open a branch of his family's sales business in Alabama. A graduate of a Florida high school, Pero was admitted to Auburn for the 2017–18 school year. Auburn denied him Alabama residency status in 2019, one reason being that Auburn decided to disallow work at a relative's business or place of employment as proof of bona fide residency. Pero has taken at least one leave of absence while enrolled at Auburn but has resided in Alabama since 2017. (*Id.* at 11, 26–29.)

Like many states, Alabama law permits public universities in the state to charge reduced tuition rates to state residents. Under Alabama law, a university student who is not a minor (at least 19 years of age) may be defined as a resident student if they meet one of several broad criteria, including permanent employment within the state. ALA. CODE § 16-64-2(a)(1). If a student is a minor at the time of registration, they may be enrolled as a resident student if their "supporting person,"

among other determining factors, can verify full-time employment within the state. *Id.* § 16-64-2(a)(2).  A supporting person is defined as the custodial parent(s), or if the parents are deceased or do not have legal custody, the legal custodian, guardian, or conservator.  *Id.* § 16-64-1(5).

Alabama law directs the board of trustees of each Alabama public university to adopt "rules and guidelines" which permit the university to comply with this statutory framework.  *Id.* § 16-64-2(c).  The institutions are also delegated the responsibility of determining whether a student is a resident for purposes of obtaining in-state tuition.  When applying for Alabama residency status, an applicant must first certify by a signed statement their Alabama residential address, an intent to remain at the Alabama address indefinitely, and "[p]ossession of more substantial connections with the State of Alabama than with any other state."  *Id.* § 16-64-3(a). The institutions must then evaluate the presence or absence of the applicant's connections to the State of Alabama by considering thirteen factors, including the location of the student's high school, the payment of Alabama state income taxes, and "[c]ontinuous physical presence in the state for a purpose other than attending school."  *Id.* § 16-64-3(b).  Alabama law also permits the governing boards of public four-year universities to implement more rigorous policies defining nonresident students than those outlined by statute.  *Id.* § 16-64-5.  Public universities must

charge nonresident students at least twice the tuition rate charged to resident students. *Id.* § 16-64-4(a).

Nine Student-Plaintiffs and six Parent-Plaintiffs who either were denied acknowledgement as bona fide Alabama residents by Auburn, or continue to be denied such status, despite claiming bona fide residency in the state, filed this action on August 4, 2021.  (Doc. 1.)  In their Second Amended Complaint, filed on February 3, 2022, the Plaintiffs claim that the Defendants administer residency review requirements in an inconsistent, unfair, and unreasonable manner and should be enjoined from operating in such a manner.  The Plaintiffs also claim that the Defendants are acting with a distinct bias against allowing formerly out-of-state students to receive in-state tuition benefits.  (Doc. 67 at 41.)  Furthermore, the Plaintiffs claim that the statutes at issue are unconstitutionally vague, are incapable of administration without due process, and are abused by Auburn for the purpose of financial gain.  (*Id.* at 41.)  Specifically, the Plaintiffs allege violations of the Equal Protection Clause, procedural and substantive due process, the Privileges and Immunities Clause, and the right to travel.  Each Plaintiff seeks attorney's fees and monetary damages for the alleged violations of their constitutional rights.  (*Id.* at 45.)  Additionally, "[all] Plaintiffs request that the court direct the Defendants to submit a detailed plan for the [Court's] approval that meets the minimal requirements of Due Process and equal protection under the 14th Amendment." (*Id.*

at 43.)  The Weidle, Culjak, Rush, Kulick, and Allen Plaintiffs all seek declaratory relief in the form of a designation that they are all bona fide Alabama residents.

### III.  STANDARD OF REVIEW

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam).  "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (alterations in original) (quoting *Lawrence v. Dunbar*, 919 F.3d 1525, 1529 (11th Cir. 1990)).  "Factual attacks," on the other hand, serve to "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits[,] are considered.'" *Id.* (citation omitted).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions.  *Id.*  A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face.  *See id.* at 679 (explaining that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  Conclusory allegations that fail to rise "above the speculative level" are insufficient to meet the plausibility standard.  *Twombly*, 550 U.S. at 555.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  It is the plaintiff's responsibility to allege sufficient facts to support his claims.  *Twombly*, 550 U.S. at 555.

# IV.  DISCUSSION

In their motion to dismiss, the Defendants raise jurisdictional and merits challenges, arguing that the Second Amended Complaint is due to be dismissed in its entirety.  The Defendants argue that the Parent-Plaintiffs lack Article III standing, the Second Amended Complaint fails to state a claim upon which relief can be granted, and the Plaintiffs are not entitled to monetary damages from the Defendants either in their individual or official capacities.  For the reasons discussed below, the Court concludes that the Parent-Plaintiffs have standing, some—but not all—of the Plaintiffs' claims are due to be dismissed for failure to state a claim, the official capacity defendants are not "persons" under § 1983 who can be sued for monetary damages, and qualified immunity bars the individual capacity claims for monetary damages.  The Defendants' remaining arguments fail or need not be considered.[2]

---

[2] The Defendants ask the Court to dismiss the Second Amended Complaint in its entirety because, in their view, it is an impermissible shotgun pleading.  (Doc. 68 at 8–9 (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320–25 (11th Cir. 2015)).)  The Eleventh Circuit has made clear that courts should not tolerate shotgun pleadings.  *See Weiland*, 792 F.3d at 1320–25.  The Second Amended Complaint, while certainly not a model of clarity, does not constitute a shotgun pleading.  Unlike situations where it is "virtually impossible" to determine which allegations support which claims for relief, here the Second Amended Complaint presents detailed factual allegations, shows that the factual allegations concern nearly all Defendants, and outlines (albeit roughly) the legal claims against the Defendants.  *See id.* at 1325 (quoting *Anderson*, 77 F.3d 364, 366 (11th Cir. 1996)).  While not all claims survive dismissal, they are not due to be dismissed on the grounds that the pleadings are presented in a shotgun manner.

The Defendants also argue that the Second Amended Complaint fails to state a claim against certain Defendants because the claims appear to rest on those Defendants' status as supervisors, and the Second Amended Complaint fails to establish the "extremely rigorous" standard for holding a supervisor liable "in [their] individual capacity for the actions of a subordinate."  (Doc. 68 at 34 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).)  The Court will assume

**A. Standing**

The Defendants argue that none of the Parent-Plaintiffs have standing, as they have not themselves suffered a concrete injury.  According to the Defendants, the parents are avenging the alleged wrongs suffered by third parties—their children— and the Second Amended Complaint centers around the students' enrollment, tuition-classification determination, and tuition itself.  (Doc. 68 at 17–18.)  However, given the information outlined in the Second Amended Complaint, which must be assumed true, the Parent-Plaintiffs have standing to proceed at this stage.

Article III standing is a threshold inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1988).  Article III of the Constitution limits federal courts to "adjudicating actual 'cases' and 'controversies.'"  *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  To satisfy Article III's well-established "case or controversy" requirement, the Plaintiffs must demonstrate that they have "standing" to sue; that is, they must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the [Defendants], and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v.*

---

without deciding that the Plaintiffs have sufficiently stated supervisory liability claims against these defendants—although the Court has serious doubts on that score.  Nonetheless, as discussed further below, all individual capacity defendants are entitled to qualified immunity.  Moreover, this argument has no impact on the official capacity claims for prospective relief against those defendants.

*Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1300 (11th Cir. 2019).  "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."  *Stalley*, 524 F.3d at 1232 (citation omitted).

Alabama law provides instructions for its state universities' determinations of who is and is not an Alabama resident for purposes of granting in-state tuition benefits.  *See* ALA. CODE §§ 16-64-1 to 5.  The student's intent to remain in Alabama is central to a university's determination of residency.  *Id.* § 16-64-1(4).  But when it comes to *minor* students, the statute allows universities to consider the residency intent of the student's parents or other supporting persons.  *See id.* § 16-64-2(a)(2) ("For purposes of admission and tuition, a public institution of higher education may consider that the term resident student includes any of the following: One who, at the time of registration, is a minor and whose supporting person satisfies one of the following . . . ."); § 16-64-1(5) (defining a student's parents as their supporting person except in limited circumstances).  And according to the Second Amended Complaint, Auburn relied upon the residency intent of students' parents in determining whether students qualified for in-state tuition rates.  Notably, the ages of the Student-Plaintiffs are not apparent in the Second Amended Complaint.

The Defendants argue that the statute's contemplation of the parents' residency does not obviate the responsibility of students for their own tuition payments, regardless of their age and capacity status.  (Doc. 75 at 7–8.)  The Defendants' argument, however, ignores that the challenged statute recognizes a significant and legally relevant role for parents of students who are minors (under the age of 19).  After all, in Alabama, a minor does not have the ability to contract and therefore cannot enter into a tuition agreement or enrollment contract with Auburn.  ALA. CODE § 16-64-1(1); *Williams v. Baptist Health Sys., Inc.,* 857 So. 2d 149, 151 (Ala. Civ. App. 2003).

Thus, if a parent is responsible for paying the tuition bill for their minor child—minor students are unable to contract with the pertinent university as a matter of law—and if Auburn relies on the parents' residency to determine the students' tuition bills, as alleged in the Second Amended Complaint and as permitted by statute, then the parent clearly suffers a concrete harm by being wrongfully designated as a non-Alabama resident for purposes of their children's tuition costs.  In short, the Court concludes that the Parent-Plaintiffs have standing insofar as their claims concern tuition payments made on behalf of their minor children.

As to when their children reached the age of majority, the Second Amended Complaint does not expressly allege that a contractual relationship or legal obligation to pay tuition exists between the Parent-Plaintiffs and Auburn.  However,

11

that omission is not fatal to the Parent-Plaintiffs' standing in this case.  The Second Amended Complaint is rife with allegations that Auburn officials sought, and continued to seek on an ongoing basis, information from the Parent-Plaintiffs to determine whether *they* are bona fide Alabama residents.  Auburn officials then allegedly use the parents' residency status to determine the students' eligibility for in-state tuition.  Moreover, the Parent-Plaintiffs allege that Auburn officials harass them on an ongoing basis to supply information regarding their residency status.  Finally, according to the Second Amended Complaint, the parents—not the students—pay the tuition bills.  Thus, Auburn's processes and decisions, which are based on information provided by the parents, directly impact the parents in terms of how much tuition they will have to pay for their children.

Furthermore, and relevant for the statutory challenge, the Court finds that Auburn's procedures are inextricably linked with the statutory framework governing residency determinations for Alabama universities, as the governing statute delegates authority to the boards of trustees of each Alabama public university to implement residency requirements for tuition purposes.  *See* ALA. CODE § 16-64-2(c).  At this early stage of the proceedings, the Plaintiffs' allegations plausibly demonstrate both the existence of an injury-in-fact and a real and immediate threat of future injury to the parents under both the challenged statutory framework and Auburn's internal procedures for residency determinations.  *See Wooden v. Bd. of*

*Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1284 (11th Cir. 2001).[3]  Accordingly, the Court finds that, at this stage, the Plaintiff-Parents have sufficiently demonstrated standing to sue Auburn for its allegedly unconstitutional residency determination processes.

As an additional matter, each Plaintiff except for Jeffrey Prosser, Brooke Prosser, and Nicholas Pero seek *declaratory relief* in the form of a judicial designation that they are bona fide Alabama residents in this matter, while each Plaintiff seeks *injunctive relief* in the form of procedural residency determinations that comply with the Fourteenth Amendment.  Both forms of relief necessarily rest upon a factual premise that the referenced student is and remains a student enrolled at Auburn.

Here, the Second Amended Complaint alleges that Brooke Prosser has graduated from Auburn.  The Plaintiffs assert that Brooke Prosser has standing to

---

[3] Some district courts have concluded that parents who pay university tuition for their adult children lacked standing to sue the university for breach of contract.  *See, e.g., Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 236–37 (N.D.N.Y. 2021), *on reconsideration sub nom. Faber v. Cornell Univ.*, No. 3:20-CV-467 (MAD/ML), 2021 WL 4950287 (N.D.N.Y. Oct. 25, 2021); *Rynasko v. N.Y. Univ.*, No. 20 Civ. 3250 (GBD), 2021 WL 1565614, at *3 (S.D.N.Y. Apr. 21, 2021); *In re Univ. of Mia. COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp. 3d 1346, 1354–55 (S.D. Fla. 2021); *but see Doe v. Emory Univ.*, No. 20-CV-2002-TWT, 2021 WL 358391, at *2–3 (N.D. Ga. Jan. 22, 2021).  However, the Court does not find those cases helpful here for two reasons.  First, the Parent-Plaintiffs have not sued Auburn for breach of contract.  Second, the tuition-paying parents in those cases sued their children's universities over the allegedly deficient quality of the students' remote classes during the COVID-19 pandemic.  Education quality is at least one step removed from paying tuition.  By contrast, here, the tuition-paying parents are suing over the tuition rates themselves and Auburn's allegedly unconstitutional processes for determining who is eligible for in-state tuition.

pursue prospective injunctive relief because the initial Complaint declares that she is enrolled at Auburn University and standing must exist at the commencement of the litigation.  (Doc. 81 at 2–3.)  Although the initial Complaint alleges she was enrolled at Auburn, the Second Amended Complaint alleges she "has now graduated" from Auburn.  (Doc. 67 at 10.)  She does not allege that she intends to re-enroll.  It follows from Brooke's graduation from Auburn that she will not be charged tuition for future semesters, whether at in-state or out-of-state rates.

"[T]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that [s]he will be affected by the allegedly unlawful conduct in the future."  *Wooden*, 247 F.3d at 1283; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  "Article III standing must be determined as of the time at which the plaintiff's complaint is filed."  *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).  But where an amended complaint has been filed, the plaintiff must also possess Article III standing on that later date, either based on the facts as alleged in the complaint or through relation back to the original complaint.  *Id.*; *see also Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (analyzing standing for prospective injunctive relief "at the time the second amended complaint was filed").

Separately, "[m]ootness doctrine ensures that a justiciable case or controversy is present 'at all stages of review.'"  *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733

(11th Cir. 2018) (citation omitted).  "If, due to events that have happened since the filing of the complaint, the court can no longer redress" the plaintiff's asserted injury, the plaintiff's claim "is moot and should be dismissed."  *Fla. Wildlife Fed. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1304 (11th Cir. 2011).[4]  "As is so often the case in suits for injunctive relief brought by students, graduation or impending graduation renders their claims for injunctive relief moot."  *Pederson v. La. State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000) (holding that, "[b]ecause the named plaintiffs will not benefit from a favorable ruling on the question implicating injunctive relief, . . . this question is moot as to them").

Brooke Prosser's graduation, alleged in the Second Amended Complaint, means that she is not likely to be injured by Auburn's allegedly unlawful conduct in the future, and a ruling directing Auburn to use new residency determination processes in the future would not redress her injuries.  It follows that either Brooke Prosser lacks standing to request prospective injunctive relief or that this request has become moot.  *Compare Wooden*, 247 F.3d at 1284–85 (finding that student plaintiff lacked standing to seek prospective injunctive relief against university's admissions policy, explaining that "[plaintiff] is now a student at [the university], and there is

---

[4] The Supreme Court has repeatedly stated that "the doctrine of mootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000) (citation omitted) (also acknowledging that this description is "not comprehensive").

no evidence that he intends to re-apply for admission to [the university] under any version of the freshman admissions policy," and therefore "[t]here is no likelihood . . . that he will ever again be exposed to [the university]'s allegedly discriminatory freshman admissions process"), *with Bd. of Sch. Comm'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128, 128–29 (1975) (per curiam) (holding that a challenge to the constitutionality of certain school board rules became moot where all plaintiffs had graduated), *and DeFunis v. Odegaard*, 416 U.S. 312, 316–20 (1974) (per curiam) (holding that a challenge to the constitutionality of a law school's admissions policies became moot where the plaintiff sought only an injunction demanding his admission to the law school, the plaintiff was admitted to the law school during the litigation, and the plaintiff was about to graduate from the law school).  Whether framed as a standing problem or a mootness problem, Brooke Prosser's graduation from Auburn means that the Court lacks jurisdiction to award her prospective relief in the form of an injunction directing Auburn to take certain actions in the future.  Similarly, since Brooke has graduated from Auburn, Jeffrey Prosser no longer faces a real and immediate threat of *future* injury related to Auburn's tuition rates, nor would a ruling directing Auburn to use different processes in the future redress his injuries.  Consequently,  the Court also lacks jurisdiction over his request for prospective injunctive relief.

Based on the Second Amended Complaint, the Court cannot discern whether any of the other student-plaintiffs have graduated from Auburn; however, a review of the dates of initial enrollment at Auburn suggest that other student plaintiffs may have graduated. The Court expects the parties to further develop this issue at a later stage in this case.

## B. Failure to State a Claim

The Defendants also argue that the Second Amended Complaint fails to state a claim upon which relief can be granted. They direct this argument towards both the individual and official capacity claims.[5] The Court will consider the Defendants' arguments with respect to each of the Plaintiffs' claims in turn.

---

[5] As explained further below, the Defendants argue that Eleventh Amendment sovereign immunity bars the Plaintiffs' official capacity claims for monetary damages. In their reply brief, the Defendants argue that *Ex parte Young* does not permit the Plaintiffs to pursue declaratory or injunctive relief because they have not "allege[d] facts sufficient to state a claim for any violation of federal law." (Doc. 75 at 9.) Under *Ex parte Young*, the Supreme Court held that private individuals can sue state officials in their official capacities for *declaratory and injunctive relief* notwithstanding Eleventh Amendment immunity. 209 U.S. 123, 155–56 (1908). The Eleventh Circuit has accordingly held: "[The *Ex parte Young*] doctrine provides an exception to Eleventh Amendment immunity for lawsuits against state officials as long as the plaintiffs seek only prospective injunctive relief to stop ongoing violations of federal law." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1215 (11th Cir. 2009). The Defendants have argued that *Ex parte Young* does not apply only because the Plaintiffs have failed to state a claim. They have not argued, for example, that any of the Defendants are improper defendants for *Ex parte Young* purposes. Thus, at this stage, the Defendants' *Ex parte Young* argument overlaps with their failure-to-state-a-claim arguments.

### 1. Equal Protection

The Second Amended Complaint asserts both facial and as-applied equal protection challenges.  The Plaintiffs allege that the statute facially violates the Equal Protection Clause because it empowers Alabama colleges to design their own definitions of what constitutes a "bona fide resident of Alabama," thereby leading to disparate treatment and "separate classes" of Alabama bona fide residents.  (Doc. 67 at 42–43.)  They additionally allege that the statute and the Defendants' conduct as applied to them violate the Equal Protection Clause.  The Defendants do not acknowledge the Plaintiffs' facial challenge, let alone argue that it should be dismissed.  Thus, the Court will begin and end with the Defendants' arguments directed at the as-applied challenge.

The Defendants argue that the Plaintiffs failed to sufficiently allege a challenge to Auburn's residency determinations under the Equal Protection Clause because they have failed to show that they were disparately treated on account of a discriminatory motive or purpose.[6]  The Plaintiffs respond that they are challenging

---

[6] The Defendants also appear to argue that the Plaintiffs' equal protection challenge fails to identify a federal or constitutional right which underlies the violation.  (Doc. 68 at 23.)  No such showing is required to properly allege a violation of the Equal Protection Clause.  "The equal protection clause 'is essentially a direction that all persons similarly situated should be treated alike.'"  *Spence v. Zimmerman*, 873 F.2d 256, 261 (11th Cir. 1989) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  The differential treatment itself is the potential constitutional violation.  Whether that differential treatment is a violation of the Equal Protection Clause is impacted by whether the underlying conduct concerns a fundamental right or a suspect class, and therefore which level of scrutiny the Court must afford the treatment.  *See Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002).

the differential treatment of bona fide Alabama residents for purposes of in-state tuition rates at Auburn University.  (*See* Doc. 72 at 13–14.)   The Defendants, pointing out only four explicit references to discrimination in the Second Amended Complaint, further argue that the allegations are far too conclusory to properly state a claim.[7]  (Doc. 68 at 24; Doc. 75 at 12.)   The Court concludes that the four references to discrimination in the Second Amended Complaint state a plausible as-applied equal protection violation when viewed in the light most favorable to the Plaintiffs and in the context of the Second Amended Complaint as a whole.

"The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'"  *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1233 (11th Cir. 2022) (quoting *City of Cleburne*, 473 U.S. at 439).   "When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification."  *Gary*, 311 F.3d at 1337.   "If a fundamental right or a suspect class is involved, the court reviews the classification under strict scrutiny."  *Id.*   If not, the Court reviews the classification under "the

---

[7] The Defendants note that the only allegation of an equal protection violation which is actually incorporated into a claim for relief is the claim that "Auburn has been capricious[,] arbitrary and *discriminatory in its application of all of the statutes*."  (Doc. 68 at 24 (quoting Doc. 67 at 6).)  Consistent with the standard the Court applies at the motion to dismiss stage and finding no rationale to believe that the Plaintiffs are intentionally misleading either the Defendants or the Court, the Court will construe the claims raised in the Second Amended Complaint as a whole.

rational basis test," asking whether it is "rationally related to the achievement of a legitimate government purpose." *Id.*

The Plaintiffs do not clearly articulate whether they think rational basis or strict scrutiny review applies here, although elsewhere they suggest that the statute and the Defendants' conduct violate the fundamental right to travel. The Court need not decide what level of scrutiny applies at this stage because the Plaintiffs' equal protection claim survives dismissal even under rational basis review. The Second Amended Complaint states a plausible equal protection claim because each Plaintiff alleges sufficient facts to show that they would reasonably be deemed bona fide Alabama residents who have lived in the state for greater than one year, and therefore can point to discriminatory treatment by Auburn officials who have found them not to be bona fide residents. The Plaintiffs have also alleged that Auburn has a financial rationale for treating them as out-of-state residents, as Auburn earns three times as much tuition from each non-resident student. The Court is unable to conceive of a rational basis for treating the Plaintiffs differently from other similarly situated Alabama residents based on the facts assumed as true in the Second Amended Complaint.[8]

---

[8] While challenges like the one at bar have been few and far between in the federal system, two other federal district courts have concluded that bona fide residents cannot be treated differently by state universities for purposes of granting in-state tuition benefits. *See Ward v. Temple Univ.*, No. CIV.A. 02-7414, 2003 WL 21281768, at *7 (E.D. Pa. Jan. 2, 2003) ("While a state may provide in-state residents with reduced tuition rates, it cannot treat similarly situated in-state residents differently for tuition purposes. For example, it cannot single out one bona fide resident

Rather than asserting a rational basis for this distinction, the Defendants argue the Second Amended Complaint is too conclusory.   The Second Amended Complaint is not a model of clarity, but it is sufficiently clear as to what the Plaintiffs are claiming and the factual basis for their claim.   At this preliminary stage, these allegations are sufficient.   The Plaintiffs have pleaded sufficient facts to sustain their as-applied equal protection challenge to Auburn University's determination that they are not Alabama residents for purposes of receiving in-state tuition rates.   And as explained above, the Defendants have not moved to dismiss the facial challenge. Accordingly, the Defendants' motion to dismiss the equal protection claim is due to be denied.

### 2. Procedural Due Process

As with equal protection, the Second Amended Complaint asserts both facial and as-applied procedural due process challenges.   The Plaintiffs allege that § 16-64-5 facially violates procedural due process because it gives Alabama colleges unfettered discretion to use "as many subjective criteria as they choose" to determine who is a bona fide Alabama citizen, rendering the provision arbitrary and capricious; and that §§ 16-64-1 through -5 facially violate due process because they make no

---

and arbitrarily charge him or her more than other bona fide residents."); *Black v. Sullivan*, 561 F. Supp. 1050, 1069 (D. Me. 1983) (concluding that the Supreme Court "has not approved of statutes or regulations which distinguish between *old* bona fide domiciliaries and *new* bona fide domiciliaries").   While this Court recognizes that *Ward* and *Black* are nonbinding, the Court finds their analysis persuasive.

provision for appellate review of an Alabama college or university's residency decision. (Doc. 67 at 42–43.) The Plaintiffs additionally allege that the statute and the Defendants' conduct as applied to them violate due process. The Defendants again do not acknowledge the Plaintiffs' facial due process challenge, let alone argue that it should be dismissed. Thus, the Court again will begin and end with the Defendants' arguments directed at the as-applied challenge.

The Plaintiffs assert that the procedures for addressing improper and wrongful denials of Alabama residency applications fall short of the Fourteenth Amendment's requirements for procedural due process. The Defendants counter that there is sufficient constitutional process in place for appealing an adverse residency determination. (Doc. 68 at 28.)

To establish a procedural due process violation under § 1983, a plaintiff must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

The dispute here centers around whether the process provided by Auburn is constitutionally adequate. The Court must balance three factors in determining whether the process provided is constitutionally adequate: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *accord Worthy v. City of Phenix City*, 930 F.3d 1206, 1223 (11th Cir. 2019).

In the Second Amended Complaint, the Plaintiffs assert that while Auburn permits students who are enrolled as non-resident students to apply for reclassification as Alabama residents, the process is plagued by a litany of deficiencies, including (1) a lack of in-person hearings; (2) bias on the part of reviewing officials without a check by independent officials; (3) a lack of written rationales supporting given determinations; (4) unclear procedures for presenting and appealing claims; and (5) unfettered discretion by reviewing officials. (Doc. 67 at 18–20.) Given that Auburn's tuition rates for non-Alabama residents are three times greater than rates for Alabama residents, the private interest at stake is great. And given the alleged deficiencies set forth in the Second Amended Complaint, the Plaintiffs have plausibly shown that the risk of an erroneous deprivation is high and that additional safeguards—for example, in-person hearings, written rationales, or both—would be of value in preventing erroneous deprivations.

Rather than addressing the alleged deficiencies as pled and analyzing them under the *Mathews* framework, the Defendants instead cite other district court

23

decisions finding that public universities are not obligated under the Fourteenth Amendment to provide a full panoply of procedural protections to those students applying for in-state residency for tuition purposes and who wish to later appeal an adverse ruling.  *See Lister v. Hoover*, No. 71–C–409 (W.D. Wis. Feb. 26, 1982), *aff'd*, 706 F.2d 796 (7th Cir. 1983); *Spielberg v. Bd. of Regents, Univ. of Mich.*, 601 F. Supp. 994 (E.D. Mich. 1985); *Black v. Sullivan*, 561 F. Supp. 1050 (D. Me. 1983); *Michelson v. Cox*, 476 F. Supp. 1315 (S.D. Iowa 1979).  But each case cited by the Defendants was decided in large part based on the unique facts before each court. For instance, the Southern District of Iowa based its conclusion in *Michelson* that an in-person hearing provided merely a marginal benefit in part on its finding that a student has three opportunities to obtain reclassification during each term and there is a meaningful opportunity to be heard at each step.  476 F. Supp. at 1321.  The Western District of Wisconsin based its conclusion in *Lister* in part on the finding that students at Wisconsin state universities could appeal their residency determinations to the legislature and the state courts.  706 F.2d at 804.

The Defendants do not even attempt to analyze Auburn's residency determination process, as alleged in the Second Amended Complaint, under the *Mathews* framework.  Rather than grapple with the factual allegations regarding the residency determination process at Auburn University and under the Alabama Code, the Defendants instead make a conclusory argument that because other district courts

have upheld unique residency determination procedures in other states as satisfying procedural due process requirements, this Court should uphold Auburn's system here.  Although the Second Amended Complaint may not be a model of clarity, it provides sufficient information about Auburn's residency determination process and the Plaintiffs' engagement with the process to allow the Defendants to grapple with the facts alleged by the Plaintiffs and provide some analysis under *Mathews* based on those facts.  The Defendants have failed to do so.  Thus, the Defendants' motion to dismiss the Plaintiffs' procedural due process claim is due to be denied.

### 3. Substantive Due Process

The Defendants also seek dismissal of the Plaintiffs' substantive due process claim to the extent one is asserted.

The Defendants argue that there is nothing conscience-shocking about asserting the justifiable governmental interest of charging preferential tuition rates for bona fide state residents.  (Doc. 68 at 27 (citing *Vlandis*, 412 U.S. at 452–53; *Starns*, 326 F. Supp. at 241).)  Contrary to the Defendants' framing, however, the Plaintiffs do not argue that it violates substantive due process for Auburn to charge different tuition rates for Alabama citizens and non-Alabama citizens in the first instance.  Instead, the Plaintiffs contend that the Defendants have engaged in conscience-shocking behavior because they have "wrongfully extract[ed] excessive tuition from duly qualified Alabama domiciled citizens," creating two classes of

Alabama citizens in order to increase the tuition payments received by Auburn. (Doc. 72 at 14–15.)

 "[T]he substantive component of the [Due Process Clause] . . . protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). "This standard is 'narrowly interpreted and applied.'" *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020) (citation omitted). "'Only the most egregious official conduct' qualifies under this standard, so 'even intentional wrongs seldom violate the Due Process Clause.'" *Id.* (citation omitted).

The Court finds that the Plaintiffs have not raised a plausible substantive due process challenge to Auburn's denial of in-state tuition rates. The Supreme Court and Eleventh Circuit have admonished courts to exercise care in expanding the scope of substantive due process rights, because "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins*, 503 U.S. at 125; *see also Peterson*, 982 F.3d at 1330. The Court has found no case law expanding substantive due process protections to in-state tuition generally or a

university's residency determinations specifically.  And the Court is mindful of the Eleventh Circuit's directive that the conscience-shocking standard is "narrowly interpreted and applied." *Peterson*, 982 F.3d at 1330 (citation omitted).  Assuming without deciding that Auburn's residency determination processes could be considered arbitrary and capricious in a general sense, the Court concludes Auburn's alleged conduct nonetheless does not qualify as "the most egregious official conduct" and thus is not sufficiently arbitrary or conscience-shocking so as to violate substantive due process. *See id.* (citation omitted).  Accordingly, the Defendants' motion to dismiss the substantive due process claim is due to be granted.

### 4. Privileges and Immunities Clause

The Defendants also argue that the Second Amended Complaint presents no colorable challenge under the Privileges and Immunities Clause of Article IV of the Constitution.  (Doc. 68 at 30–31.)  The Defendants further assert that the Clause applies only where a state has allegedly discriminated against out-of-staters with respect to the privileges and immunities the state affords to its own citizens. According to the Defendants, because the Plaintiffs repeatedly allege and argue that they are Alabama citizens, they have no viable claim under the Privileges and Immunities Clause.

The Privileges and Immunities Clause states that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

U.S. CONST. art. IV, § 2, cl. 1. This Clause prohibits a state from denying to *out-of-state* citizens the "fundamental" privileges and immunities enjoyed by citizens of the state. *See, e.g.*, *McBurney v. Young*, 569 U.S. 221, 226–27 (2013); *United Bldg. & Constr. Trades Council of Camden Cnty. & Vicinity v. Mayor & Council of the City of Camden*, 465 U.S. 208, 215–18 (1984). "The object of the Privileges and Immunities Clause is to 'strongly . . . constitute the citizens of the United States [as] one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998) (first and third alterations in original) (citation omitted). But where government action affects a subclass of state citizens, the disadvantaged state citizens "have no claim under the Privileges and Immunities Clause." *United Bldg. & Constr. Trades Council*, 465 U.S. at 217 (explaining that where a New Jersey city ordinance would disadvantage New Jersey citizens who do not reside in the city as well as out-of-state citizens, "the disadvantaged New Jersey residents have no claim under the Privileges and Immunities Clause").

The Plaintiffs do not respond to the Defendants' arguments regarding their Privileges and Immunities Clause claim. Instead, the Plaintiffs confusingly cite the Privileges *or* Immunities Clause of the Fourteenth Amendment—a different provision from Article IV's Privileges *and* Immunities Clause—and assert that the

Defendants have denied bona fide Alabamians "a benefit of the state in which they are properly domiciled." (Doc. 72 at 16.) But given their allegations and theory that they are Alabama citizens, the Plaintiffs "have no claim under the Privileges and Immunities Clause." *See United Bldg. & Constr. Trades Council*, 465 U.S. at 217. Accordingly, the Defendants' motion to dismiss the Privileges and Immunities Clause claim is due to be granted.

### 5. Right to Travel

The Defendants argue that the Plaintiffs have not pled facts showing that their right to travel under the Fourteenth Amendment has been infringed. (Doc. 68 at 32.) The Defendants also assert that durational residency requirements have been found by other courts not to infringe upon the right to travel. (*Id.* at 32–33.) The Plaintiffs do not engage with the merits of the Defendants' argument; rather, they say the "initial mention of the right to travel exists in this case **only to show** that all the Defendants were or should have been aware of the holdings in the *Saenz* [*v. Roe*, 526 U.S. 489 (1999)] and *Shapiro* [*v. Thompson*, 394 U.S. 618 (1969)] cases that neither the State nor its subsidiary has the ability to maintain two classes of citizens for the purposes of denying one their rights as a citizen of that state." (Doc. 72 at 17.) The Plaintiffs further state that these cases will "hereinafter be used to bolster the failure of qualified immunity." (*Id.*) Based on their response, the Plaintiffs have all but conceded that they have not brought a separate right-to-travel claim but

instead rely on case law concerning the right to travel in their attempts to defeat the Defendants' qualified immunity defense to the Plaintiffs' asserted claims. To the extent the Second Amended Complaint asserts an independent right-to-travel claim, the Court will treat the claim as conceded and abandoned. Accordingly, the Defendants' motion to dismiss the right-to-travel claim is due to be granted.

In sum, the Defendants' motion to dismiss for failure to state a claim is due to be granted as to the Plaintiffs' substantive due process, Privileges and Immunities Clause, and right-to-travel claims. The motion is due to be denied as to the Plaintiffs' equal protection and procedural due process claims—subject to the Court's conclusion below that the Plaintiffs cannot recover monetary damages from the Defendants in this case.

### C. Monetary Damages

The Defendants also assert that the Plaintiffs cannot recover monetary damages from the Defendants in their individual or official capacities. The Defendants argue that the Plaintiffs' requests for monetary damages should be dismissed because (1) the Defendants in their official capacities are not "persons" under § 1983 and also because they are entitled to Eleventh Amendment sovereign immunity, and (2) the Defendants in their individual capacities are entitled to qualified immunity. The Court agrees with the Defendants that the requests for monetary damages are due to be dismissed.

### 1. Official Capacity Claims

The Court begins with the Defendants' defenses to the official capacity claims for monetary damages.  First, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" who are suable for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Additionally, the Eleventh Amendment to the United States Constitution provides states sovereign immunity from suit.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984).  The Eleventh Amendment likewise bars suits for money damages brought against state officials in their official capacities because those suits are, in effect, suits against the state.  *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).  While Congress may waive Eleventh Amendment immunity to enforce rights under the Fourteenth Amendment, such Congressional intent must be "unequivocally express[ed]" for the waiver to be effective.  *Pennhurst*, 465 U.S. at 99 (citing *Fitzpatrick v. Bitker*, 427 U.S. 445 (1976); *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).  Congress did not waive this immunity in enacting § 1983.  *Quern*, 440 U.S. at 342.  Accordingly, state officials sued in their official capacities are immune from claims for money damages.  *Cross v. State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995).

These two defenses are distinct yet similar.  "The ultimate issue in the statutory inquiry"—whether a defendant is a "person" under § 1983—"is whether

States can be sued under [the federal] statute; and the ultimate issue in the Eleventh Amendment inquiry is whether unconsenting States can be sued under [the federal] statute." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 779 (2000). Eleventh Amendment immunity is a subject matter jurisdiction issue, *see McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001), whereas the question whether a defendant is a "person" under § 1983 is a statutory interpretation issue, *see Will*, 491 U.S. at 64–65; *Vt. Agency*, 529 U.S. at 778–79.[9] Although jurisdictional questions are normally given priority, the United States Supreme Court has instructed that when presented with both defenses, courts should address the statutory question first. *Vt. Agency*, 529 U.S. at 779.

Auburn University is a corporate agency of the State of Alabama. Ala. Code § 16-48-1. And as noted above, "a suit against a state official in his or her own official capacity is . . . a suit against the official's office." *Will*, 491 U.S. at 71. Accordingly, the Defendants in their official capacities are not "persons" under § 1983 who are suable for monetary damages. *See id.*; *see also Satterfield v. Bd. of Trs. of Univ. of Ala.*, No. 2:15-cv-1549-KOB, 2016 WL 6916828, at *3 (N.D. Ala. Feb. 26, 2016) (concluding that the University of Alabama Board of Trustees is not

---

[9] The Defendants are incorrect that the issue of whether a defendant is a person under § 1983 is a jurisdictional issue.

a "person" subject to a § 1983 claim for monetary damages).[10]   Because the Court has concluded that the Defendants in their official capacities are not suable § 1983 "persons," the Court need not address the Eleventh Amendment question.   *Cf. Vt. Agency*, 529 U.S. at 787 (concluding that a state agency was not a suable "person" under the False Claims Act and "express[ing] no view on the question whether an action in federal court by a *qui tam* relator against a State would run afoul of the Eleventh Amendment").   All claims against all Defendants in their official capacities for monetary damages are due to be dismissed.

### 2.  Individual Capacity Claims

The Defendants also argue that qualified immunity bars the Plaintiffs' individual capacity claims for monetary damages because the Defendants did not violate any clearly established law.

"[I]mmunity is a right not to be subjected to litigation beyond the point at which immunity is asserted." *Howe v. City of Enterprise*, 861 F.3d 1300, 1302 (11th Cir. 2017) (per curiam).  Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the "complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas Cnty.*, 285 F.3d

---

[10] While the Court acknowledges that *Satterfield* is nonbinding, the Court finds its analysis persuasive.

1334, 1337 (11th Cir. 2002); *see also Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd en banc*, 764 F.2d 1400 (11th Cir. 1985).

Qualified immunity protects government officials from suit unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant "asserting that he is entitled to the protection of qualified immunity must initially establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Once the defendant has made this showing, the burden shifts to the plaintiff" to show that qualified immunity is not appropriate. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (internal citations omitted).

Once a defendant has proven that he was acting within his discretionary authority, the burden shifts to the plaintiff, who must make two showings. "[T]he plaintiff must establish that the defendant violated a constitutional right" and that the right violated was "clearly established."[11] *Griffin Indus., Inc.*, 496 F.3d at 1199. "[C]learly established law consists of holdings of the Supreme Court, the Eleventh

---

[11] Courts may consider these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Circuit, or the highest court of the relevant state." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019).

The parties do not dispute that the Defendants acted within their discretionary authority, and the Court accordingly will focus on whether the facts pled in the Second Amended Complaint show that the Defendants violated a constitutional right that was clearly established.  While the Court concludes that Plaintiffs' equal protection and procedural due process rights may have been violated under the facts pled in the Second Amended Complaint, the Court cannot conclude that the allegedly violated rights were clearly established.

The Plaintiffs assert that, under *Shapiro v. Thompson*, 394 U.S. 618, 627–32 (1969), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974), and *Saenz*, 526 U.S. at 506–07, the Defendants understood that creating two classes of domiciled citizens is unconstitutional.  However, whether an act is unconstitutional is only one part of the qualified immunity analysis.  The Plaintiffs also must show that the violated constitutional right was *clearly established* at the time the alleged violation occurred.

The Plaintiffs identify no Supreme Court or Eleventh Circuit precedent holding unconstitutional a university's residency determination process for in-state tuition purposes.  The Plaintiffs instead argue that *Shapiro* and *Saenz* sufficiently put the Defendants on notice that they were violating the Plaintiffs' constitutional rights.

The Court is not persuaded.  These cases addressed state statutes denying or limiting new state residents' access to welfare benefits, holding in each case that the statute was unconstitutional.  *See Saenz*, 526 U.S. at 492 (holding that state statutory provision limiting the maximum welfare benefits available to residents who had resided in the state for less than 12 months violated the Fourteenth Amendment right to travel); *Shapiro*, 394 U.S. at 621–22, 638 (holding that a state statutory provision denying welfare assistance to residents of the state who had not resided in the state for at least one year violated the Equal Protection Clause).  The statutes held unconstitutional in *Saenz* and *Shapiro* are materially different from the allegedly constitutional conduct for which the Plaintiffs seek monetary damages here: residency determinations for in-state tuition purposes that state officials allegedly implemented in an arbitrary, capricious, and/or biased manner.  Although the Plaintiffs are correct that there need not be a case directly on point to overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  The Court is not persuaded that *Saenz* or *Shapiro* places the constitutional questions presented here beyond debate.  Were the students allegedly denied access to Auburn based on residency, rather than denied in-state tuition rates, the Court might face a closer question.  But based on the facts and claims the Plaintiffs have

pled, the Court cannot agree that *Shapiro* and *Saenz* clearly established the rights allegedly violated here.

All Defendants are entitled to qualified immunity.[12]   All claims brought against Defendants in their individual capacities are due to be dismissed.[13]

## V. CONCLUSION

Accordingly, it is hereby ORDERED as follows:

(1) The Defendants' motion to dismiss (Doc. 68) is GRANTED to the following extent:

    a. The Plaintiffs' substantive due process, Privileges and Immunities Clause, and right-to-travel claims are dismissed in their entirety.

    b. The individual capacity claims are dismissed as to all Defendants. Accordingly, Defendants Dr. Jay Gogue, Bill Hargrave, Charles D. McCrary, and Sarah B. Newton are dismissed as defendants from this action.

---

[12] Because the Court concludes that all individual capacity Defendants are entitled to qualified immunity, the Court pretermits discussion of the Defendants' supervisory liability arguments.

Additionally, since all claims for monetary damages are due to be dismissed, and the Court lacks jurisdiction over Plaintiffs Jeffrey S. Prosser's and Brooke Prosser's requests for prospective injunctive relief, Plaintiffs Jeffrey S. Prosser and Brooke Prosser are due to be dismissed as parties to this case.

[13] Since Plaintiffs Jeffrey S. Prosser and Brooke Prosser are due to be dismissed from this action, the Court need not address the res judicata arguments raised by the Defendants.

c. Plaintiffs Jeffrey S. Prosser and Brooke Prosser are dismissed as plaintiffs from this action.

The Defendants' motion to dismiss is DENIED in all other respects.

(2) The official capacity claims for injunctive relief for alleged violations of the remaining Plaintiffs' (Fred Rush, Nicholas Rush, Alex Rush, Gordon Weidle, Brandon Weidle, Michael Culjak, William Culjak, Caroline Culjak, Nicholas Pero, Laura Kulick, Zoe Kulick, Scott Allen, and Haley Allen) equal protection and procedural due process rights, both facially and as applied, shall proceed against all remaining Defendants (B.T. Roberts, Clark Sahlie, James W. Rane, Bob Dumas, Jimmy Sanford, Gaines Lanier, Elizabeth Huntley, Michael A. Demaioribus, James Pratt, Raymond J. Harbert, Wayne T. Smith, Quentin Riggins, Timothy Vines, Kay Ivey, Sarah Nobles, Karen Battye, Susan Marsh, Zeke Smith, Caroline Aderholt, Vini Nathan, and Chris Roberts).

(3) The official capacity claims for declaratory relief for alleged violations of the Weidle, Culjak, Rush, Kulick, and Allen Plaintiffs' equal protection and procedural due process rights, both facially and as applied, shall proceed against all remaining Defendants.

**DONE**, on this the 10th day of January, 2023.

                              _____/s/ R. Austin Huffaker, Jr._____
                              R. AUSTIN HUFFAKER, JR.
                              UNITED STATES DISTRICT JUDGE